UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NUMAN NUNN,                       )
                                  )
          Plaintiff,              )
                                  )        No. 25 C 2159
     v.                           )
                                  )        Judge Sara L. Ellis
CITY OF CHICAGO,                  )
                                  )
          Defendant.              )

## OPINION AND ORDER

Plaintiff Numan Nunn, an African American male diagnosed with chronic shift work disorder, has worked for Defendant City of Chicago (the "City") as a police officer since November 30, 2012. After his superiors denied his shift change request, he filed this lawsuit claiming that the City engaged in disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I), and race discrimination in violation of 42 U.S.C. § 1983 (Count II). Nunn also alleges "the intentional infliction of emotional harm and negligent impairment of his work performance." Doc. 2 ¶ 3. The City moves to dismiss Nunn's § 1983, intentional infliction of emotional distress ("IIED"), and negligence claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Nunn has insufficiently pleaded these claims, the Court dismisses them without prejudice, leaving Nunn to proceed only with his ADA claim.

## BACKGROUND[1]

Nunn, an African American male, began working for the Chicago Police Department ("CPD"), on November 30, 2012. He remains employed as a CPD officer. As a police officer, Nunn worked the night shift. On December 9, 2022, a medical professional diagnosed Nunn with chronic shift work disorder, which causes him increased stress, extreme fatigue, depression, and sleep disorder. Nunn's condition impacted his work as he struggled with sleep and staying awake during his night shift.

After Nunn received his diagnosis, his doctor advised him to switch to a daytime shift. Nunn approached his district commander, Brendan McCrudden, to request the shift change. While Nunn understood that Commander McCrudden had discretionary authority to make such a change, Commander McCrudden declined to do so, instead advising Nunn that he needed to seek a disability accommodation through the City's Human Resources ("HR") Department. However, Commander McCrudden did exercise his discretion to allow another CPD officer, Eric Perez, a white Hispanic male with less seniority, to change from a night to a day shift based on Perez's night vision issues.

Nunn filed two applications for disability accommodations with the City's HR Department. The City denied both requests, indicating that the approval of a shift change "would be an undue hardship on the City to breach the Collective Bargaining Agreement." Doc. 2 ¶ 16. According to the HR Department, CPD retained the ability to grant a disability accommodation based on seniority when vacancies arose. The City's HR Department did offer Nunn an opportunity for reassignment to a position outside of CPD, but Nunn declined the offer

---

[1] The Court takes the facts in the background section from Nunn's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving the City's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011)

because he wanted to remain a police officer. Nunn also unsuccessfully reached out to request a shift change from Katheryn Perry-Hopkins, the City's Disability Officer, and Judith Mars, the City's Manager of Special Accommodations.

On March 15, 2024, Nunn filed a discrimination charge against the City with the Equal Employment Opportunity Commission ("EEOC"), alleging race and disability discrimination based on the City's failure to accommodate his disability. The EEOC issued a right to sue notice on December 2, 2024. On February 5, 2025, CPD assigned Nunn to an afternoon shift, but only as a temporary assignment, not a disability accommodation. Nunn filed this lawsuit on February 28, 2025.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Section 1983 Claim (Count II)

The City seeks dismissal of Nunn's § 1983 claim, in which Nunn claims that the City discriminated against him based on his race because it denied his request for a shift change.[2] Nunn cannot hold the City liable for a constitutional violation under § 1983 pursuant to the doctrine of *respondeat superior*.  *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). The City may be held liable, however, when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).  To state a *Monell* claim, Nunn must allege: "(1) [he] was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action was the moving force behind the federal-rights violation.'"  *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023).

The City focuses its argument on the second element, contending that Nunn has not alleged any municipal action.  Nunn can show municipal action through (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage within the force of law; or (3) a constitutional injury that was

---

[2] Presumably, Nunn contends that the City violated his equal protection rights when it allegedly discriminated against him based on his race.  *See de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019) ("[T]he Equal Protection Clause protects against intentional discrimination on the basis of race or national origin, and 42 U.S.C. § 1983 provides an employee subjected to such discrimination a path to relief.").  The Court analyzes this claim in the same way it would analyze a Title VII claim, with "the principal difference . . . who can be named as a defendant."  *Paterakos v. City of Chicago*, 147 F.4th 787, 795 (7th Cir. 2025).

caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). In his response, Nunn does not advance any argument that the City maintains an express policy, and so the Court does not address that prong further. Nunn instead appears to contend that the City had a widespread practice of giving CPD Commanders authority to make staffing adjustments, with Commander McCrudden having "ministerial authority, independent of seniority decisions, to make staffing adjustments." Doc. 15 at 2. According to Nunn, this caused his injury because Commander McCrudden granted a less senior white Hispanic officer a shift change but denied such an accommodation to him.

The Court cannot make sense of Nunn's *Monell* theory. Although the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)), Nunn's allegations nonetheless fall short of suggesting a widespread practice. Nunn may rely on his own experiences at the pleading stage, *id.*, but he must still include some allegations to allow the inference that the City maintained a policy or practice of discrimination, as opposed to the inference that his injuries arose from a random event, *see Rossi*, 790 F.3d at 737 (a *Monell* claim requires "a widespread practice that permeates a critical mass of an institutional body," not "individual misconduct"); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." (citation omitted) (internal quotation marks omitted)). All that Nunn alleges here is that one individual within CPD may have acted with discriminatory animus in denying him a shift

5

change. This suggests individual misconduct, not a widespread practice, and so cannot support a *Monell* claim. *See Rossi*, 790 F.3d at 737.

Although not entirely clear, Nunn also could be attempting to argue that Commander McCrudden had final policymaking authority. For Commander McCrudden to have final policymaking authority, he "must be responsible for establishing final government policy in a particular area or on a particular issue." *Klingler v. City of Chicago*, No. 15-CV-1609, 2017 WL 3394722, at *1 (N.D. Ill. Aug. 8, 2017) (citing *Valentino v. Vill. of S. Chi. Heights*, 575 F. 3d 664, 675–76 (7th Cir. 2009)). "State or local law determines whether a person has policymaking authority for purposes of § 1983." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). Here, Nunn's complaint does not include plausible allegations that Commander McCrudden had the authority to set policy for employment decisions. Instead, as the Seventh Circuit has recognized, the Chicago City Council and the City's Commissioner of Human Resources are the final policymakers for employment decisions. *Id.* Although Commander McCrudden may have had some authority to make staffing adjustments, as Nunn alleges, this makes no difference absent an allegation that the final policymakers delegated not only the authority to make such adjustments but also the authority to make policy to Commander McCrudden. *See Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) ("Under the delegation theory, the person or entity with final policymaking authority must delegate the power to make policy, not simply the power to make decisions. 'There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire.'" (quoting *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 739 (7th Cir. 1999))). Because Nunn has not included such an allegation or any other plausible basis for holding the City liable pursuant to *Monell*, the Court dismisses his § 1983 claim.

6

**II.      Potential State Law Claims**

In his complaint, Nunn refers to "the intentional infliction of emotional harm and negligent impairment of his work performance."  Doc. 2 ¶ 3.  He does not, however, designate these as specific claims on which he seeks relief.  While Nunn need not plead legal theories or set forth claims in his complaint, if he seeks to pursue IIED or negligence claims, he must at least allege facts that could give rise to these claims.  *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

For this reason, the City has moved to dismiss any potential IIED and negligence claims, contending that the complaint does not sufficiently include facts to put it on notice of the claims and that the Illinois Tort Immunity Act bars any such claims.  Nunn fails to address the City's arguments, except to state that the City has improperly invoked the Illinois Tort Immunity Act because it does not apply to federal civil rights claims or claims of willful and wanton conduct.  Given Nunn's failure to set forth any argument as to the sufficiency of an IIED or negligence claim in his response, the Court finds that Nunn has effectively conceded that he has not sufficiently pleaded such claims.  *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ( "[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").  Therefore, the Court dismisses any IIED and negligence claims that Nunn might have raised in his complaint without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss [11]. The Court dismisses Nunn's § 1983 claim (Count II), as well as any potential IIED and negligence claims, without prejudice.


Dated: September 23, 2025

SARA L. ELLIS
United States District Judge